Cadwalader *v.* United States Express Co., Appellant.

Cadwalader, Appellant *v.* United States Express Co.

*Landlord and tenant—Construction of contract.*

Plaintiff owned premises No. 622 Chestnut street, and plaintiff rented premises No. 716 Chestnut street. Plaintiff agreed to take No. 716 off the hands of defendant if the defendant would take a lease of No. 622 for five years. Subsequently an agreement in writing was prepared which recited the letting of No. 622, and that in the " preliminary contract for said letting," the plaintiffs had agreed to relieve defendant of the rent falling due on No. 716 from April 1, to September 1, 1889. Following

these recitals was the promise of the plaintiff to pay the rent from which he had previously agreed to relieve the defendant. *Held,* that the defendant was entitled to retain possession of the old premises for such reasonable time as might be required to fit up the new premises for occupation, and that at the expiration of such reasonable time the plaintiff should have possession of the old premises, to protect himself, if possible from the liability which he had assumed.

Argued Feb. 5, 1892. Appeals, Nos. 254 and 274, Jan. T., 1891, by plaintiffs and defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1890, No. 1173, on verdict for plaintiffs. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit on a lease to recover five months rent of premises 622 Chestnut street at $500 per month.

The facts appear by the opinion of the Supreme Court.

WILSON, J., charged in part as follows:

" The case arises under what must be regarded as one agreement, which is in writing. There is in form a lease and an accompanying agreement, which was put in writing, between the parties, and the two papers must, I am very clear, under the evidence, be taken together as one and considered as one. The lease was of certain premises situated on Chestnut street, above Sixth, for the term of five years from the 1st of April, 1889. There was also, in the accompanying agreement, a stipulation of the lessors, the trustees, the Messrs. Cadwalader and Fisher, that they would assume and pay the rental of $400 per month from the first day of April, 1889, until the first day of September, 1890, for that portion of the premises No. 716 Chestnut street which was then occupied by the defendants, the United States Express Company.

" Now, all the contract which there was between the parties upon that whole subject, I charge you, is contained in these written papers.

" The principle of law which is applicable it is not necessary for me to state; you are bound, as I hope you have already found by your experience, to take the law as you get it from the court and to apply it to the facts.

" [This is the contract. And all the conversations which took place previous to the written contract are of no importance in determining any of these matters which are involved

in this contract. The parties met, and a writing was the result. That writing was entered into by people not now present, except the lessors, but the lessee was a corporation, whose office is in New York, and there they acted upon it, according to the evidence, and very naturally, and they are to be bound by what is in writing, by what was submitted to them, and nothing else can properly affect them.] [1 a]

" It is very obvious, however, from what you have heard that the reason for the making of the supplemental or accompanying agreement was that the express company was, at the time when the lease was negotiated, in occupation of certain other premises. They did not desire to have upon their hands at the same time two places. They did not desire to be subject to the rent of two places at the same time, and it is perfectly obvious if the two papers together, all considered, without taking any of the testimony which you have heard—it is perfectly obvious, and it is very natural and proper that the trustees of the estate, as it was better for them, for the sake of getting a lease for a considerable time and a reputable and responsible tenant, thought it advisable to assume some liability for the rent for the place which was then occupied by the express company. I am not now speaking of what the liability was, but some liability.

["Now, I think the full scope of their liability is one which is very clear to your common sense, and I think it is very clear under the law. There was no express obligation on the part of the express company to transfer the premises No. 716 Chestnut street to the trustees and to give them possession of it. I say there was in the written contract no express assumption of any such obligation. You can, it seems to me, reasonably infer from the terms of the contract that the express company was entitled to take a reasonable time for the purpose of putting the premises on Chestnut street above Sixth into a proper condition for occupation. That they had a right to do under any circumstances, and, in any event, to take whatever time was reasonably sufficient for that purpose, and during that time they had a right to occupy the premises 716 Chestnut street, and, for the time, the trustees would be clearly and undoubtedly liable to pay the rent of 716 Chestnut street;] [1 b] but when that time elapsed, and [when after such

reasonable time the express company should go into possession of 622 Chestnut street, then, I think, undoubtedly there was an implied obligation on the part of the express company to enable the trustees to make whatever profitable use they could out of the premises No. 716 Chestnut street. They were bound to afford to them every facility for their purpose.] [3] I cannot say that they were bound to put them into possession, because I cannot know, nor can you, whether they had that power under the lease by which they held the premises 716 Chestnut street, as that lease is not in evidence. It may have forbidden them from doing anything of that sort and it may have forbidden them to assign or put any other people in possession, [but, as I have already said, and I repeat it, they were bound to give to the trustees the opportunity, if they desired and requested it, to make any profitable use of 716 Chestnut street which they could.] [4]

["Now there is a contradiction of the evidence upon that point. You have the correspondence and you have heard the oral testimony in regard to it. Did they offer to do that? Did the express company do that—did they stand ready to do it? Did they show it by their conduct, or, on the contrary, did they put obstacles in the way? Did they decline to do it?] [5] [Did the trustees, the plaintiffs, here lose anything by reason of anything which took place between them and the defendants by reason of the unwillingness or the refusal or the failure on the part of the defendants to give them every opportunity and facility which they could to enable them to make a profitable use of the premises 716 Chestnut street? If they did, then the express company cannot ask to be allowed any such damages on the part of the trustees.] [6]

"Now the claim on the part of the trustees is for five months' rent under the lease—$2,500. The express company says there should be set off against that $400 for each month, with interest. Of course, if the interest goes on one side it must go on the other, as has been argued by the counsel for the plaintiffs. The counsel for the plaintiffs claims, under the law, as I have stated it, that there shall be an allowance to the plaintiffs of four months' rent of 716 Chestnut street, that is, of $400 for each month. They claim that at least there should be an allowance for the months of July and August. That is for you to settle.

["If you think the defendants did not meet their implied obligations and afford every facility to the plaintiffs and every opportunity to make such use of the premises 716 Chestnut street as they could, after they, the defendants, had taken a reasonable time in fitting up the place 622 Chestnut street, you must make an allowance in favor of the plaintiffs.] [7] I cannot affirm the plaintiffs' point.

[" I think I have covered the defendants' point."] [8]

Defendants' points, which were refused, were as follows:

1. " The agreement and the lease formed the contract, and there is no evidence that will warrant a finding that any change in the written contract was made by parol."

2. " There is nothing in the lease or agreement providing for any surrender of possession of No. 716 Chestnut street to the plaintiffs."

Judgment and verdict for plaintiffs for $1,413.32.

Plaintiffs and defendant appealed.

*Errors assigned* by plaintiffs were (1 a, 1 b) the portions of the charge as above.

*Errors assigned* by defendant were (1–8) instructions, quoting points and portions of the charge as above.

*John G. Johnson*, for plaintiffs below.

*Josiah R. Adams, Samuel B. Huey* with him, for defendants below.

Opinion by Mr. Justice Williams, March 7, 1892.

These cases depend upon the same question. The action was brought to recover rent due to the plaintiff for premises No. 622 Chestnut street, Phila. The plaintiff's case was made by the introduction of the lease from themselves to the Express Co. The defendant did not question the validity of the lease or the amount of rent alleged to be unpaid, but relied upon a set-off. To establish its right to the set-off, and the amount of it, the company called its own superintendent as a witness, and proved by him the following facts: That, prior to April 1, 1889, the Express Co. occupied No. 716 Chestnut street as its general office in this city; that, desiring to secure No. 622, which was much larger, and remove to it, the witness opened negotiations with the plaintiffs for that purpose, in the progress of which he asked the plaintiffs' agent: " Do you suppose the owners

of this property (No. 622) would take our lease of No. 716 off our hands for the period of four or five months?" The agent replied that he would bring the subject to their attention, and somewhat later reported to the witness that the plaintiffs would take No. 716 off the hands of the company if it would take a lease of No. 622 for five years at $500 per month. The result of these negotiations was communicated to the officers of the company in New York, who evidently approved and ratified them, for the witness says: " Our general counsel in New York felt that the fact of their relieving us of the rent for that number of months should be stated in writing, and consequently the matter was placed in your hands (the Philadelphia counsel) and the result was this agreement." It appears, therefore, that, so far from the agreement and lease bringing to the company in New York knowledge, in the first instance, of the arrangement, the suggestion to reduce the plaintiffs' undertaking to writing, came from the company after the character of the arrangement had been known to its officers. What the company asked was, that the plaintiffs should take No. 716 off its hands. This was what the plaintiffs undertook to do.

As evidence of this undertaking, at the suggestion of "general counsel," a paper was prepared which recited the letting of No. 622, and that in the " preliminary contract for said letting " the trustees had agreed to relieve the company of the rent falling due on No. 716, from April 1 to Sept 1, 1889. Following these recitals was the promise of the trustees to pay the rent from which they had previously agreed to relieve the company. This paper was then put in evidence, after which the defendant proved the non-payment by the plaintiffs of the rent referred to, and that it had been required to pay the same to an amount equal to the plaintiffs' claim, and rested. To this the plaintiffs replied that the reason of the non-payment by them was the refusal of the defendant to deliver the possession of No. 716 to them. They said in substance, " We tried to keep our contract with you and take No. 716 off your hands, but you would not let us; you refuse us the possession and you cannot require us to pay the rent." This was a conclusive answer to so much of the set-off as accrued after the removal of the company to No. 622. To so much as accrued before such removal it was not an answer unless there was unreason-

able delay in making the necessary repairs, and in transferring the business from the old to the new quarters.

The defendant asked the court below to disregard its own evidence showing the negotiations, and the " preliminary contract " in which they resulted, and treat the written promise of the plaintiffs to pay the rent on No. 622 as the only evidence of the nature of their undertaking, and as an absolute and unconditional promise to pay the rent. This the court declined to do. It held, on the other hand, that the written agreement must be construed by the aid of its recitals, and of the " preliminary contract " on which it rested, and that, so construed, it was the duty of the express company to put the plaintiffs in possession of No. 622 as soon as it reasonably could. We think this was clearly right. The plaintiffs were bound to take the premises off the hands of the company, and were entitled to protect themselves, so far as they might be able to do so, against the liability they had assumed, by turning the possession to account. They had no right to insist on the possession until the lapse of a reasonable time within which to make the necessary repairs, and transfer the business of the company to No. 622, and they were bound by their agreement to pay the rent accruing on No. 716 while this work was in progress. This was the rule laid down in the court below.

The judgment is affirmed in both appeals.